HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FREDERICK FIEDLER and SUZANNE FIEDLER, husband and wife; ERIC FIEDLER, an individual; and LISA DRACOBLY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, DEPARTMENT OF VETERAN'S AFFAIRS<br><br>Defendant. | NO. C06-5708 RBL<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter is before the Court on plaintiffs' motion for partial summary judgment. [Dkt. # 13] The Court has considered the pleadings filed in support of and in opposition to the motion, and the remainder of the file herein.  For the reasons set forth below, plaintiffs' motion is DENIED.

## II. BACKGROUND

Plaintiff Frederick Fiedler is a Vietnam veteran who suffers from both post-traumatic stress disorder ("PTSD") and Hepatitis B.  On February 9, 2004, Mr. Fiedler was seen at American Lake Veterans Affairs Hospital ("American Lake") in Tacoma, Washington.  This facility is owned and operated by the defendant.  Mr. Fiedler was evaluated at American Lake by Paul Spataro, a nurse practitioner who prescribed SSRI antidepressants for the Mr. Fiedler's PTSD symptoms.

On March 16, 2004, Mr. Fiedler returned to Nurse Spataro complaining of increased tremors and insomnia. In response, Nurse Spataro changed the brand and dosage of Mr. Fiedler's SSRI prescription.[1] On March 23, Mr. Fiedler complained of nausea occasioned by the second SSRI brand, and Nurse Spataro discontinued drug treatment entirely. On March 26, Mr. Fiedler was admitted to the Madigan Army Medical Center Emergency Room after his wife noticed that he was "turning yellow." He was re-admitted to Madigan on March 31 and again on April 6. He was subsequently transferred to the University of Washington Medical Center, where a liver transplant was performed.

Plaintiffs filed the instant suit on December 14, 2006, under the Federal Tort Claims Act. [Dkt. #1.] Plaintiffs' complaint avers (1) that Mr. Fiedler's diagnosis of Hepititis B was long-standing, (2) that American Lake knew of this diagnosis, (3) that the SSRIs in question are known to adversely effect the liver, (4) that American Lake failed to secure informed consent prior to prescribing SSRIs, (5) that American Lake was careless and negligent in its provision of medical services to Mr. Fiedler, and (6) that these failures were the cause of Mr. Fiedler's eventual liver failure. [Id.]

Plaintiffs now move for partial summary judgment on the issues of duty and breach with respect to their claim for failure to secure informed consent. [Dkt. #13.] Plaintiffs argue that the risk of liver damage was a "material risk" within the meaning of RCW 7.70.050(2), thereby necessitating disclosure. Plaintiffs also claim that Mr. Fiedler specifically inquired about the potential effect the drugs might have on his liver and that this inquiry triggered a heightened duty on the part of the defendant to disclose all risks, no matter how minimal. [*Id.*] In the alternative, plaintiffs suggest that the defendant failed in its obligation to secure informed consent by neglecting to discuss alternative treatments before prescribing the SSRI antidepressants. [*Id.*]

The defendant responds that the risk to the liver associated with the use of SSRIs is idiosyncratic and that disclosure of this risk was not required. [Dkt. #16.] Defendant notes that whether Mr. Fiedler ever specifically inquired about the risk of liver damage is a matter of some dispute and, as such, that summary judgment is inappropriate. [*Id.*] Defendant also submits a declaration from Nurse Spataro stating that it would have been his standard practice to discuss alternative treatments with the patient. [*Id.*]

---

[1] Nurse Spataro prescribed Sertraline and later changed the prescription to Fluoxetine. These drugs are commonly sold under the brand names Zoloft and Prozac, respectively; both are selective serotonin reuptake inhibitors, or "SSRIs."

ORDER
Page - 2

### III. DISCUSSION

A federal court hearing a case under the Federal Tort Claims Act will apply the substantive law of the state in which the acts and omissions giving rise to the claim occurred. 28 U.S.C. § 1346(b); *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). However, such claims remain governed by the Federal Rules of Civil Procedure. *United States v. Yellow Cab Co.*, 340 U.S. 543, 553, 71 S.Ct. 399, 95 L.Ed. 523 (1951).

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Put another way, summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. *Id*. at 252. When viewing the evidence at the summary judgment stage, all justifiable inferences are drawn in favor of the non-moving party. *Id*. at 255

To prevail on an informed consent cause of action under Washington law, the plaintiffs must prove at the outset that the health care provider failed to inform the patient of a material fact relating to the treatment.[2] RCW 7.70.050(1)(a); *Backlund v. University of Washington,* 137 Wn.2d 651, 664, 975 P.2d 950 (1999). Not all facts must be disclosed, only the material ones. *Smith v. Shannon*, 100 Wn.2d 26, 30-31, 666 P.2d 351 (1983). The test for materiality is objective, and a fact is deemed material when a reasonably prudent person in the position of the patient would attach significance to it when deciding whether to submit to the proposed treatment. RCW 7.70.050(2); *Backlund*, 137 Wn.2d at 666.

**A.    There is a genuine issue of fact as to whether the risk in question was sufficiently probable to qualify it as material.**

Determining the materiality of a given risk is a two-step process. *Smith*, 100 Wn.2d at 33. First, the nature of the harm which may result and the probability of its occurrence must be determined. *Id*. It is then for the trier of fact to decide whether that probability of that type of harm is a risk which a reasonable patient would consider in deciding on treatment. *Id*.

---

[2] The plaintiffs must also prove (1) that the patient consented to the treatment without being aware of or fully informed of such material fact or facts, (2) that a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts, and (3) that the treatment in question proximately caused injury to the patient. RCW 7.70.050(1).

In the case at bar, there is an issue of fact as to whether the risk of liver damage was sufficiently probable to necessitate disclosure. Dr. Wilson's report claims that neither SSRI medication prescribed to Mr. Fiedler is known to be directly toxic to the liver. [Dkt. #16-3, Ex. E, Report of William H. Wilson, M.D.] Dr. Wilson also points to at least one study conducted in 2003 which found no clinically significant liver toxicity due to treatment with the SSRIs in question here. [*Id.*] The defendant has also submitted a report from another expert, Dr. Schwartz, who states in his report that "there are only a handful of case reports of severe hepatotoxicity related to this medication, and liver injury from this mediation is a rare phenomenon." [Dkt. #16-3, Exb. F, Report of Jonathan M. Schwartz, M.D.] The plaintiffs' own expert, Dr. Adler, testified in his deposition that "the risk of hepatotoxicity is relatively rare, and when it occurs is considered to be an idiosyncratic reaction." [Dkt. #16-3, Ex. H, Deposition of Richard S. Adler, M.D.]

When inferences are drawn in favor of the non-moving defendant, these statements constitute sufficient evidence for the trier of fact to find that the probability of liver damage was so rare as to render disclosure unnecessary. As such, summary judgment for the plaintiffs in inappropriate. *See Liberty Lobby*, 477 U.S. at 252.[3]

**B.   *Mason's* suggestion of mandatory disclosure of all risks is dicta and does not constitute binding precedent.**

Plaintiffs also introduce Mr. Fiedler's deposition testimony, in which he claims to have specifically requested information about the risk to his liver. Plaintiffs contend that this request imposed an obligation on the defendant to provide a complete and full warning of all risks, no matter how rare.

To support this proposition, plaintiffs cite dicta from the Washington Court of Appeals opinion in *Mason v. Ellsworth*, 3 Wn. App. 298, 313, 474 P.2d 909 (1970). However, the statement in question was not essential to the court's holding and was made for illustrative purposes only. Such a statement constitutes dicta and does not pronounce a rule of law. *State ex rel. Johnson v. Funkhouser*, 52 Wn.2d 370, 373-74, 325 P.2d 297 (1958).

Even were this not the case, an issue of fact would still exist as to whether Mr. Fiedler ever made

---

[3]Plaintiffs misinterpret the Washington Court of Appeals holding in *Estate of Lapping v. Group Health Cooperative of Puget Sound*, 77 Wn.App. 612, 892 P.2d 1116 (1995). That case merely held that disclosure of some rare risks *may* be required and that the trial court had erred in keeping the issue from the jury. *Id*. at 626. It did not hold that disclosure was required as a matter of law.

such a specific inquiry and, if so, whether Nurse Spataro provided an adequate response. Nurse Spataro has no recollection of Mr. Fiedler raising specific concerns regarding liver damage, and no notations regarding those concerns are contained within the records. [Dkt. #16-2, Exb. C, Affidavit of Paul Spataro.] Nurse Spataro also claims he would have warned Mr. Fiedler that he might experience side effects unique to him. [*Id.*] This issue is not appropriate for resolution via summary judgment.

**C.  There is genuine issue of material fact as to whether alternative treatments were discussed with Mr. Fiedler.**

Plaintiffs also contend that there is no evidence that Nurse Spataro discussed alternative treatments with Mr. Fiedler. Plaintiffs argue that such a discussion was mandatory here, and that the failure to do so constitutes breach of the duty to obtain informed consent. *See Seybold v. Neu*, 105 Wn. App. 666, 682-83, 19 P.3d 1068 (2001) ( failure to inform patient of appropriate surgical alternative to removal of healthy bone tissue may give rise to claim for failure to secure informed consent).

In response, the defendant has submitted an affidavit from Nurse Spataro in which he describes his standard practice during consultations. [Dkt. #16-2, Exb. C, Affidavit of Paul Spataro.] According to his affidavit, Nurse Spataro would have advised Mr. Fiedler of the existence of other psychiatric medications, encouraged him to remain in psychotherapy with the VA, and informed him that he could seek psychiatric treatment on his own in the community. [*Id.*] This affidavit creates a genuine issue of material fact as to whether alternatives were discussed, rendering summary judgment on the issue inappropriate.

**D.  Nurse Spataro's affidavit does not specifically contradict prior testimony.**

In their reply brief [Dkt. #17], plaintiffs contend that Nurse Spataro's affidavit specifically contradicts prior deposition testimony such that it cannot create an issue of fact, citing *McCormick v. Lake Washington School Dist.*, 99 Wn. App. 107, 111, 992 P.2d 511 (1999).

In his deposition, Nurse Spataro indicated that he had no specific recollection of speaking with Mr. Fiedler. [Dkt. #13-14, Deposition of Paul P. Spataro, p. 19.] Nevertheless, he went on to testify regarding that conversation based on his general practice and on his notes contained in the medical records. [*Id*, pp. 19-25.] Nurse Spataro's declaration is to the same effect, claiming no specific recollection of his meeting with Mr. Fiedler but discussing his customary practice. [Dkt. #16-2, Exb. C, Affidavit of Paul Spataro.] Thus, unlike the conflicting statements made in *McCormick*, Nurse Spataro's deposition testimony and the

statements in his affidavit do not contradict one another. Nurse Spataro's affidavit is properly considered on this motion for summary judgment.

## IV. CONCLUSION

There is a genuine issue of fact regarding the probability that liver damage would result from the use of SSRI antidepressants and, correspondingly, whether specific disclosure of this risk was required. A similar issue of fact exists as to the whether alternative treatments were discussed. Therefore, IT IS HEREBY ORDERED that Plaintiffs' Motion for Partial Summary Judgment [Dkt. #13] is DENIED.

DATED this 7th day of January, 2008.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE